[Crim. No. 5928. Second Dist., Div. Two. June 26, 1958.]

THE PEOPLE, Respondent, v. DANIEL BOONE HYMES, Appellant.

Russell E. Parsons, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

HERNDON, J.—Appellant was convicted of the crimes of burglary in the first degree, attempted rape, and rape. He appeals from the judgments and from the order denying his motion for a new trial. He raises no question concerning the regularity of the criminal proceedings, the fairness of his trial, or the sufficiency of the evidence to justify the jury's verdict of guilt. Appellant seeks a reversal herein solely upon the basis of contentions to the effect that he was denied substantial constitutional and statutory rights in connection with proceedings taken under the provisions of section 5500 et seq., of the Welfare and Institutions Code, resulting in his commitment and confinement for some 17 months as a sexual psychopath.

Having been convicted (upon evidence so clear and convincing that its sufficiency could not reasonably be questioned) of two violent sex crimes of a most serious nature, and involving distressing harm to the innocent victims, appellant himself

invoked the provisions of the Sexual Psychopathy Act[1] by filing an affidavit in which he requested the institution of sexual psychopathy proceedings against him and expressed his need of psychiatric treatment.[2]

Immediately upon the filing of said affidavit, the court, acting in conformity with the provisions of sections 5501 and 5504,[3] appointed two psychiatrists to examine appellant and report. Appellant's application for the institution of sexual psychopathy proceedings was set for hearing on June 28, 1955. Appellant and his counsel were present at this hearing, and after the court's statement that it had read and considered the report of the court-appointed doctors, both sides rested. The court thereupon found appellant a probable sexual psychopath, and ordered him committed to Atascadero State Hospital for a period of not more than 90 days for observation and diagnosis pursuant to section 5512. Criminal proceedings were adjourned.

On September 20, 1955, following the 90-day period of observation and diagnosis, the court found appellant to be a sexual psychopath on the basis of the report of the superintendent of the Atascadero State Hospital. An order was thereupon made committing appellant to that hospital for an indeterminate period and criminal proceedings were adjourned. A copy of said original commitment was personally served on appellant within five days after the making of the order, as required by section 5512. It does not appear that appellant made any demand for a hearing in court as to the question of sexual psychopathy within 10 days after the service of the order of commitment, as he had a right to do under the provisions of section 5512.

On March 23, 1956, at the request of appellant and pursuant to section 5519, the court ordered the superintendent of the state hospital to submit within 30 days his opinion under

[1]Section 5501, subdivision (a), of the Welfare and Institutions Code provides that proceedings under the act may be initiated by the trial judge on his own motion, on motion of the prosecuting attorney ''or on application by affidavit by or on behalf of the defendant.''

[2]Appellant also addressed a letter to the trial judge under date of September 20, 1956, explaining the motivation of his crimes as follows: ''I felt very persecuted and rejected in favor of my wife's mother. My crimes were the force raping of elderly women. My mother in law is an elderly woman. These women I raped were symbolic of my mother in law. So my crimes were a sublimation for the desire to fight, will to power, (hostility).''

[3]All statutory references are to the Welfare and Institutions Code unless otherwise stated.

subdivision (a), (b), or (c) of section 5517,[4] including a report, diagnosis and recommendation concerning appellant's future care, supervision or treatment. On the basis of the superintendent's report under subdivision (c) of section 5517 the court on May 2, 1956, found that appellant had not recovered from his sexual psychopathy and was still a menace to the health and safety of others and denied his request that he be returned for further hearing. On November 5, 1956, a similar report was again ordered at appellant's request. The opinion of the superintendent under subdivision (c) was filed, and on the basis thereof appellant was ordered returned for further proceedings. After hearing on January 29, 1957, the appellant being present with his counsel, judgment was pronounced, and appellant was sentenced to state prison for the crimes of which he had theretofore been found guilty.

The major premise of appellant's argument on this appeal is that the proceedings under the Sexual Psychopathy Act are essentially criminal in nature. From this premise appellant argues that he was denied certain constitutional and statutory rights in the proceedings by which he was committed and maintained in custody as a sexual psychopath. More specifically, appellant contends that (1) he was deprived of the right to a jury trial on the issue of sexual psychopathy; (2) he was committed for an indeterminate period on hearsay evidence without a hearing; and (3) he was denied the statutory right (Pen. Code, § 686, subd. 3) to confront the medical witnesses on whose statements the court found him to be a sexual psychopath. The following excerpts from appellant's opening brief indicate the substance of his contentions:

"The commitment of the defendant for an indeterminate

---

[4] § 5517. "Whenever a person who is committed for an indeterminate period to the department for placement in a state hospital as a sexual psychopath (a) has recovered from his sexual psychopathy to such an extent that in the opinion of the superintendent the person is no longer a menace to the health and safety of others, or (b) has been treated to such an extent that in the opinion of the superintendent the person will not benefit by further care and treatment in the hospital and is not a menace to the health and safety of others, or (c) has not recovered from his sexual psychopathy, and in the opinion of the superintendent the person is still a menace to the health and safety of others, the superintendent of the hospital shall file with the committing court a certification of his opinion under (a), (b), or (c), as the case may be, including therein a report, diagnosis and recommendation concerning the person's future care, supervision or treatment. If the opinion so certified is under (a) or (b), the committing court shall forthwith order the return of the person to said committing court and shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge. . . ."

period on hearsay evidence, without a hearing, was unconstitutional, and deprived the defendant and appellant of due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States.''

''We realize the heft of the laboring oar were we to attack the constitutionality of this Act, but we respectfully urge that this Court should carefully consider the decisions that have gone before, both by appellate courts and the Supreme Court just hereinabove cited, for it would appear that where a man is deprived of his liberty, that the proceeding is criminal in nature, especially in view of the fact that this defendant and appellant had been tried by a jury on charges of criminal offenses, namely, burglary and rape, which are denounced by the penal code. It needs no argument here that those are criminal offenses, with severe penalties attaching thereto. This proceeding arose out of, and was held in connection with, the criminal proceeding and is an integral part of it, we here contend. Therefore, the rules which apply to criminal proceedings must of necessity control in the proceedings in this case.''

Even if appellant's contentions were not directly contrary to the law as declared in recent decisions of the Supreme Court of this state, appellant would be in no position to advance them successfully on this appeal, which is taken only from the judgments of conviction and from the order denying his motion for a new trial in the criminal proceedings.

In the first place, it has been recently decided that ''An original order of commitment as a sexual psychopath is appealable as a final judgment in a special proceeding under section 963 of the Code of Civil Procedure, and subsequent orders redetermining his condition made under section 5519 are appealable under subdivision 2 of section 963 as special orders after final judgment.'' (*People* v. *Gross*, 44 Cal.2d 859, 860 [285 P.2d 630] ; *Gross* v. *Superior Court*, 42 Cal.2d 816, 821 [270 P.2d 1025].)

In the instant case appellant has not appealed from any of the orders made in the sexual psychopathy proceedings, which are civil in nature and collateral to the criminal case. (*Gross* v. *Superior Court, supra*, 42 Cal.2d 816, 820; *People* v. *Bachman*, 130 Cal.App.2d 445, 447-448 [279 P.2d 77].) Hence all these orders have become final and are not reviewable upon this appeal from the judgments in the criminal case.

In the second place, it is to be remembered that appellant himself initiated the sexual psychopathy proceedings. Having invoked the beneficent provisions of the law, and

having sought the hoped-for benefits of the observation, care and treatment thereby accorded him, appellant cannot be heard to question the constitutionality of the law. (*Tracy* v. *MacIntyre*, 29 Cal.App.2d 145, 150 [84 P.2d 526]; *Foster* v. *Superior Court*, 26 Cal.App.2d 230, 234 [79 P.2d 144]; *Zeibak* v. *Nasser*, 12 Cal.2d 1, 18 [82 P.2d 375].)

█ In the third place, all of appellant's arguments are based upon the false premise that the sexual psychopathy proceedings are criminal in nature. That such proceedings are civil in nature and are collateral to the criminal proceedings is, of course, a well settled principle of law. (*Gross* v. *Superior Court, supra,* 42 Cal.2d 816, 820; *People* v. *Bachman,* 130 Cal.App.2d 445, 447-448 [279 P.2d 77], and cases cited.)

█ In the fourth place, with respect to appellant's complaints that he was committed without a hearing and upon hearsay evidence and that he was denied a jury trial, it is to be emphasized that appellant at no time requested a jury trial, nor did appellant demand a hearing in court after the original order of commitment within the time allowed by section 5512. This is not surprising in view of the fact that the court in making the order of commitment was simply following the clearly prescribed procedures which appellant's application for the institution of the proceedings necessarily contemplated.

█ The only suggestion of error in the criminal proceedings relates to the determination of appellant's sanity which was made on January 29, 1957, immediately before judgment was pronounced. Previously, on January 8, 1957, the trial judge had declared a doubt as to appellant's present sanity, and appointed a psychiatrist to make an examination and report. The doctor's report was filed promptly thereafter and expressed the opinion that as of the date of the report (January 17, 1957) the appellant was sane. It contains the following expression: "In my opinion, this man understands the nature of the proceedings against him and is able to cooperate with his attorney in the preparation and conduct of his case." The reporter's transcript of the proceedings at the time judgment was pronounced reflects the following statements of the trial judge: "Pursuant thereto the Court appointed at your request a doctor to make examination to see whether or not at the present time you were sane or insane. Dr. McNeil made the examination and made the report that you are at the present time sane in his opinion. The Court adopts that opinion as its own."

The clerk's minutes for January 29, 1957, recite: "The Court finds that the defendant was sane *at the time each offense in each information was committed.*" Thus, as appellant points out, there is a conflict between the clerk's minutes and the reporter's transcript. ■ The question ". . . as to which of the two records is controlling . . . is to be determined from a consideration of the circumstances under which the proceedings were had." (*People* v. *Washington,* 95 Cal.App. 2d 454, 456 [213 P.2d 70]; *In re Evans,* 70 Cal.App.2d 213, 216 [160 P.2d 551].) ■ In the circumstances here presented, the answer is clear. It is obvious that the reporter's transcript accurately reflects the court's determination of appellant's sanity at the time judgment was pronounced.

The judgments and order appealed from are affirmed.

Fox, P. J., and Ashburn, J., concurred.