[Crim. No. 3952.  First Dist., Div. Two.  Feb. 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM BOWIE, Defendant and Appellant.

Emanuel Boasberg III, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and John F. Foran, Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—By an information dated January 6, 1961, appellant, William Bowie, was charged with two counts of assault with a deadly weapon with intent to commit murder, in violation of section 217 of the Penal Code: the first against one Pete Coletsos on December 3; the second against his wife, Irene Bowie, on the same date. Appellant was duly arraigned, waived a jury trial, and entered pleas of not guilty to each of the counts of the information. On this appeal from the judgment[1] finding him guilty of one count of assault against Pete Coletsos in violation of section 245 of the Penal Code, the argument is that the trial court erred in permitting the introduction of the transcript of the preliminary hearing without the appellant's stipulation or consent, as he was not represented by counsel, and as such transcript constituted the basis for the judgment of conviction. There is no merit in either of these contentions.

The record reveals the following: at the time of his arraignment and plea, on January 11, the appellant appeared in propria persona and stated that he wanted a jury trial and that he wished to exercise his constitutional prerogative and act as his counsel. By consent, the matter was set for trial on February 9, 1961. Thereafter, at the appellant's request, the matter was advanced to January 13, when the following ensued: "THE DEFENDANT: At this time, your Honor, after due thought and consideration, I would like to waive the jury trial, submit myself to the judgment of this Court at the earliest possible trial date, if I may. THE COURT: You want to waive a jury trial, is that it? THE DEFENDANT: Yes, sir. THE CLERK: Consent to that? MR. MAURER: Yes, the People consent. THE COURT: All right, what date? MR. MAURER: Would you want to submit the matter on the transcript? MR. DRESOW: Oh, don't take advantage of him that way. He doesn't understand that. Why don't you set it down for the 20th, Friday, the 20th? He doesn't understand that. Let the Court—— THE COURT: Why don't you, why don't you let the Public Defender—— MR. DRESOW: We don't want him, Judge, but I don't want him taken advantage of. THE COURT: Why don't you let him help you on this matter. You're waiving a jury trial, and we're putting it down for—— MR. MAURER: February 20th. MR. DRESOW: January 20th. THE COURT: You talk to the District Attorney. THE DEFENDANT: May I enter a plea for my hearing in Municipal Court to be given to

---

[1]No motion for a new trial was made.

me? THE COURT: You don't have that? THE DEFENDANT: No, sir, I don't have it." Subsequently, the court informed the defendant that he would receive a copy of the transcript of the preliminary hearing, and set the matter for January 20.

On that date, the following occurred: "THE CLERK: The matter of William Bowie, for decision. He had waived a jury trial and submitted it on the transcript. THE DEFENDANT: Yes."

Thereafter, the transcript of the preliminary hearing[2] was read and revealed the following: Officer Finnegan of the San Francisco Police Department, testified that about 9 in the evening of December 3, 1960, he responded to a call at the lobby of a hotel located at 481 Minna Street. When he entered the lobby, the appellant was slashing and stumbling about with a knife. The victim, Pete Coletsos, was bleeding from his left side and there was blood on the knife as well as on the appellant's hands. Four officers attempted to subdue the appellant. When ordered to drop the knife and turn around, the appellant refused but turned around with the knife still in his hand and pointed at the officer. Finally, the officers subdued the appellant and took the knife. At this time, the appellant was cursing and screaming and said: "I will kill him, I would have killed him if you hadn't stopped me." The appellant's wife was in the hotel room, lying in a large pool of blood. She told the police officers that her husband had stabbed her. About 10 minutes later, when questioned at the station, the appellant, referring to Coletsos, said: "I would have killed him if you hadn't stopped me" and stated that he had stabbed his wife because she wouldn't let him sleep and had awakened him.

Pete Coletsos testified that on December 3, 1960, he was living at the hotel at 481 Minna Street; he walked into the hallway at about 9 p. m. and started to pick up some newspapers when he was approached by the appellant who tried to abuse and kick him. Coletsos had never seen the appellant before but returned to his room and picked up a hammer and walked downstairs. The appellant followed him with a knife and cut him in the neck and stomach. As a result of the wounds, he spent nine days in the hospital.

The appellant's wife testified that she had stabbed herself with a marine bayonet and denied telling anyone that the appellant had stabbed her.

---

[2] The record indicates that at the preliminary hearing the appellant was represented by the public defender.

At the conclusion of reading the transcript of the preliminary hearing, the court asked the appellant: "Did you submit the case on the transcript? Did you intend that I read this transcript and make a decision from that, or did you want to testify?" The appellant replied: "Your Honor, I want the witnesses present, with the Court's approval, to question them, to have the privilege of cross-examining them, and let the Court decide the matter after that."

Thereafter, Officer Finnegan substantially repeated his testimony at the preliminary hearing and was cross-examined by the appellant. Officer Mulligan of the San Francisco Police Department, corroborated Finnegan's testimony, particularly as to appellant's voluntary statements at the police station and was also cross-examined by the appellant.

Thereafter, the appellant testified in his own behalf and stated he had drunk approximately three fifths of wine and had taken aspirin and was unable to recall all the events which had transpired on the evening of December 3. He did not recall that he had fought with a man who attempted to enter his apartment but declared he was defending himself, his wife and home, and that the victim with whom he struggled had attacked him with a hammer and also struck him with it. He admitted the man with whom he had fought had run downstairs and he himself had run down the stairs and everything else was a blank. Coletsos was subpoenaed but did not appear. The court found the appellant guilty of the lesser included offense of assault with a deadly weapon (Pen. Code, § 245) against Coletsos and dismissed the count relating to the appellant's wife.

■■ Appellant now argues that during the proceedings of January 13, as well as when he answered "yes" to the above-quoted question of the clerk on January 20, he did not understand that he was agreeing both to a submission of the matter on the transcript and to the waiver of a jury trial. The People concede that the above-quoted language from the reporter's transcript admits of an ambiguity and appears to conflict with the clerk's minutes which show that the matter was submitted on the testimony at the preliminary hearing. The People argue, however, that under the circumstances, the clerk's minutes are controlling under the circumstances here presented. We agree. (*People* v. *Hymes,* 161 Cal.App.2d 668, 674 [327 P.2d 219].) Furthermore, we note that the appellant did not object to the reading of the preliminary transcript. ■■ The appellant must be treated as having the

qualifications and responsibilities concomitant with the role he chose to undertake in representing himself (*People* v. *Green,* 191 Cal.App.2d 280, 285 [12 Cal.Rptr. 591]).

Appellant's contention that the judgment of conviction was based on the evidence adduced at the preliminary examination is equally without merit. From the above, it is manifestly clear that apart from the evidence of the preliminary examination, there was ample evidence to support the conviction for assault with a deadly weapon in violation of section 245 of the Penal Code.

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 11, 1962.